# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JON ARNOLD, individually and on behalf of a class of persons similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 1:18-cv-06644<br>) |
| v. | ) Hon. Sara L. Ellis<br>) United States District Judge<br>) |
| JPMORGAN CHASE BANK, N.A. AND EARLY WARNING SERVICES, LLC, | )<br>)<br>) |
| Defendants. | ) |

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY FURTHER PROCEEDINGS AND COMPEL ARBITRATION**

December 7, 2018

Paul J. Ferak (ARDC No. 6272208)
Michael R. Cedillos (ARDC No. 6296052)
Christopher A. Mair (ARDC No. 6324283)
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
*Attorneys for JPMorgan Chase Bank, N.A.*

The dispute set forth in Plaintiff's putative Class Action Complaint ("Complaint") is subject to a binding and enforceable written agreement that requires Plaintiff to resolve all disputes over his account on an individual basis in arbitration. In the Complaint, Plaintiff alleges that JPMorgan Chase Bank, N.A. ("Chase") and Early Warning Services, LLC ("EWS") failed to properly execute a single payment transfer in October 2016 that Plaintiff claims he directed Chase to make from Plaintiff's Chase checking account using "QuickPay." Based on this single transaction from more than two years ago, Plaintiff asserts class claims against Chase and EWS for (1) violating the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), (2) unjust enrichment, and (3) violating the Electronic Funds Transfer Act ("EFTA").

Plaintiff's claims are subject to arbitration because the contracts governing his Chase account, including his Chase Deposit Account Agreement ("DAA"), require Plaintiff to arbitrate – on an individual basis – "any dispute relating in any way to [Plaintiff's] account or transactions." Inasmuch as Plaintiff's claims plainly fall within the broad scope of the parties' arbitration clause and class action waiver, Plaintiff is required to pursue his claims in an individual arbitration rather than before this Court. *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1622-23 (2018) (enforcing arbitration clause and class action waiver).

Courts in the Seventh Circuit routinely enforce similar arbitration agreements under the Federal Arbitration Act ("FAA") and Illinois law. *See, e.g.*, *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1031-33 (7th Cir. 2011) (enforcing arbitration clause and class action waiver); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558-59 (7th Cir. 2003) (enforcing arbitration clause and class action waiver); *Williams v. TCF Nat'l Bank*, No. 12 C 5115, 2013 WL 708123, at *14 (N.D. Ill. Feb. 26, 2013) (compelling individual arbitration). Moreover, courts around the country have already enforced the same or substantially similar Chase arbitration agreements as the one

1

before this Court. *See, e.g.*, *Johnson v. JPMorgan Chase Bank, N.A.*, 2018 U.S. Dist. LEXIS 167272, *7-24 (C.D. Cal. Sept. 18, 2018) (compelling individual arbitration); *Tinsley v. JPMorgan Chase Bank, N.A.*, 2014 N.Y. Misc. LEXIS 4728, at *2-3 (same); *Scott v. JPMorgan Chase & Co.*, 2014 WL 338753, at *10-11 (S.D.N.Y. Jan. 30, 2014) (same), *aff'd*, 603 Fed. Appx. 33 (2d Cir. 2015); *Sanchez v. J.P. Morgan Chase Bank, N.A.*, 2014 WL 4063046, at *4-5 (S.D. Fla. Aug. 15, 2014) (same).

For these reasons, and as explained more fully below, pursuant to Federal Rule of Civil Procedure 12(b)(3), this Court should enter an order compelling Plaintiff to arbitrate his claims on an individual basis. This action should be stayed pending the completion of Plaintiff's individual arbitration as required by the FAA.

## FACTUAL BACKGROUND

### I. Plaintiff's Allegations and Claims

Plaintiff is a Chase customer who opened his checking account with a predecessor bank that was acquired by Chase. (Compl. ¶ 8.) In the Complaint, Plaintiff complains of a single online payment that he initiated from his Chase checking account on October 1, 2016. (*Id*. ¶¶ 18-20.) Plaintiff alleges that he authorized, through Chase's online QuickPay service, a payment of $650 that he directed to be sent to his landlord, who had a bank account at Bank of America. (*Id*. ¶ 18.) Plaintiff alleges that the $650 was withdrawn from his Chase checking account as he directed, but claims that the funds were not received by his landlord. (*Id*. ¶¶ 19, 20.) Plaintiff alleges that Bank of America confirmed to him that it received the payment, but Plaintiff claims that Chase allocated the payment to an incorrect account. (*Id*. at ¶ 27.) Plaintiff claims that Chase was the only entity who could reverse the transaction, but that Chase refused to do so after explaining to Plaintiff that the transaction was completed as directed by Plaintiff. (*Id*. at ¶¶ 28, 31-32.) On this basis, and because Plaintiff disagrees with the October 2016 outcome, Plaintiff asserts claims against Chase

2

for violating ICFA and the EFTA and for unjust enrichment.

Based on the single October 2016 transaction identified in Plaintiff's Complaint, Plaintiff brings the ICFA claim on behalf of a putative Illinois class of: "[a]ll Illinois JP Morgan Chase & Co. ('Chase') customers who maintained any account with Chase that permitted an electronic payment method through clearXchange or Quickpay, who issued an instruction for an electronic transfer that was incorrectly effectuated from their account." (*Id.* ¶ 39.) Plaintiff brings the unjust enrichment and EFTA claims on behalf of a nationwide class of: "[a]ll JP Morgan Chase & Co. ('Chase') customers in the United States who maintained any account with Chase that permitted an electronic payment method through clearXchange or Quickpay, who issued an instruction for an electronic transfer that was incorrectly effectuated from their account." (*Id.* ¶ 40.)

## II. Plaintiff's Agreement to Arbitrate All Claims and Disputes Relating to His Account

### A. Plaintiff Accepted Chase's DAA and Agreed to Arbitrate

Plaintiff agreed to be bound by Chase's DAA when he began using Chase's banking services for his checking account ending in x0059 (the "Account"). Chase makes a copy of the effective Chase DAA available to every customer who holds a Chase deposit account. (Declaration of Laura Deck (the "Deck Dec."), attached hereto as Exhibit 1, ¶ 5.) In addition, Chase sends copies of updated versions of the DAA directly to its customers by either electronic delivery or direct mail. (*Id.*) For example, Chase sent every customer in the United States – including Plaintiff – an enclosure along with the December 2011 account statement that contained a new version of the DAA effective on February 1, 2012. (*Id.*)

When Chase sent the December 2011 statement and 2012 DAA to Plaintiff, Plaintiff had elected to receive paper statements and other communications for the Account via regular mail to the address Plaintiff provided to Chase. (*Id.* ¶ 6.) Based on this, Chase sent a copy of the December

3

2011 statement and the enclosed 2012 DAA to Plaintiff by regular mail to Plaintiff's address. (*Id*.) Every monthly account statement sent to Plaintiff for the past ten years, and even before, contains language expressly stating that Plaintiff's Account is governed by the currently-effective DAA and provides contact information if Plaintiff believes that there are any errors or other problems with his Account. (*Id*. ¶ 12.)

> Plaintiff's December 2011 account statement included the following on the first page:
>
> We are making some changes that affect Chase personal and business checking, savings and Certificate of Deposit (CD) accounts, including retirement accounts*. Enclosed with this statement is a rewritten Deposit Account Agreement (formerly known as the Account Rules and Regulations). The new design of this booklet will make it easier for you to read and find the information you need quickly. Please review the information and keep this as reference with your other financial documents.
>
> ***
>
> For checking and savings accounts, all changes are effective on February 1, 2012.

(*Id.* at p. 7 (Ex. A, Statement p. 1).)

The first page of the DAA Plaintiff received in December 2011 stated: "The arbitration language is new and includes several changes. Among other things: you may opt out of future arbitration by April 2, 2012 for checking and savings accounts …." (*Id*. at p. 13 (DAA p. 1).)

Further, the DAA explained in bolded and italicized font that:

> ***This Deposit Account Agreement is the contract that governs your account. Please be sure to read it carefully and keep it in a safe place. If you have any questions regarding any of the information contained in this agreement, please stop by any Chase branch and talk with one of our bankers. They'll be happy to help. You can also call us at one of the numbers listed on the back cover.***

(*Id*. at p. 17 (Ex. A, DAA p. 4).) The DAA explained that "[b]y . . . using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms contained in this agreement." (*Id.*) The DAA also explained that:

> [Chase] may change the terms of this agreement, including any fees and features of your account, at any time. We will tell you about changes at least 30 calendar

4

days in advance … By maintaining your account after the effective date of any change, you agree to the change.

(*Id*. at p. 35 (Ex. A, DAA p. 22)).)

Plaintiff continued to maintain his Chase Account and use Chase's banking services after Plaintiff became a Chase customer, including after Chase sent Plaintiff the DAA in December 2011. (Compl. ¶¶ 8-37.) Plaintiff could have elected to opt out of the arbitration agreement by calling a toll-free number or speaking to a Chase banker. (Declaration of William Garrett (the "Garrett Dec."), attached hereto as Exhibit 2, ¶ 4.) Plaintiff did not opt out of arbitration by April 2, 2012, as was his option under the DAA. (*Id*.) Plaintiff, therefore, agreed to arbitrate any disputes with Chase. (*Id*.)

### B. Plaintiff Confirmed His Agreement to Arbitrate and Be Bound By The DAA

Plaintiff also confirmed his agreement to be bound by the DAA and arbitrate any disputes by accepting the Chase Online Service Agreement ("OSA") in 1999. (Declaration of Nicholas Sergi (the "Sergi Dec."), attached as Exhibit 3, ¶ 6.) On April 20, 2006, Plaintiff re-confirmed his acceptance of the OSA in order to use Chase's online banking services, including for the Account. (*Id*. ¶ 10.) Plaintiff did this by accepting the OSA at 11:16 a.m. while logged into Chase's online system using his User ID and password. (*Id*.) To confirm his acceptance of the OSA, Plaintiff was required to affirmatively click separate boxes confirming that he read and agreed to the OSA. (*Id*. ¶ 11.) The OSA in effect at the time Plaintiff filed his lawsuit sets forth:

> the terms and conditions that govern your use of Chase Online$^{sm}$, Chase Mobile®, Chase Pay®, Chase Online for Business Banking, and J.P. Morgan Online and any applicable software products and associated documentation we may provide through those websites and mobile applications, or to use the products, services or functionality offered through those websites and mobile applications ("Software") and certain third party digital platforms as determined by us from time to time (collectively, the "Online Service").

(*Id.* at p. 15 (Ex. B., ¶ 1).) The OSA further states that:

> When you use or access, or permit any other person(s) or entity to use or access the Online Service, or download or use any Software, you agree to the terms and conditions of this Agreement. We may amend or change this Agreement (including applicable fees and service charges) from time to time, in our sole discretion, by sending you written notice by electronic mail or by regular mail or by posting the updated terms on the sites within the Online Service (the "Site(s)"). Please access and review this Agreement regularly. If you find the Agreement unacceptable to you at any time, please discontinue your use of the Online Service. Your use of the Online Service after we have made such changes available will be considered your agreement to the change.

(*Id*.) By accepting the OSA, Plaintiff further confirmed his agreement to be bound the written agreements governing his Chase checking account, including the DAA:

> In addition to this Agreement, you agree to be bound by and comply with such other written requirements as we may furnish to you in connection with either this service or products which may be accessed via this service, including, but not limited to, **all account agreements**, end user license agreements, and with all applicable State and Federal laws and regulations.

(*Id*. at p. 18 (Ex. B, ¶ 9) (emphasis added).) Plaintiff further agreed to be bound by the QuickPay Service Agreement, through the use of his User ID and password, and when doing so, he further confirmed his agreement to be bound by the DAA and OSA, and also that payment transfers would be made via the email address or mobile phone number provided by Plaintiff. (*Id.* ¶ 16; *id.* at p. 62 (Ex. C, p. 12)).

    **C.    The Applicable Arbitration Agreement**

The DAA effective May 2018 was in place when Plaintiff filed his Complaint. (Ex. 1 (Deck Dec.) ¶ 8.) The May 2018 DAA requires that Plaintiff's claims are subject to mandatory arbitration (the "Arbitration Agreement"):[1]

> You and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court). This arbitration agreement is entered into pursuant to the Federal

---

[1] There are no material differences between the Arbitration Agreement in the May 2018 DAA, the version that Chase sent to Plaintiff in December 2011, or the most recent version. Plaintiff received notice on his account statement each time the DAA was updated. (Deck Dec. ¶¶ 9-10.)

Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

(*Id.* at p. 338 (Ex. J, p. 15).)

The Arbitration Agreement broadly covers all claims concerning Plaintiff's Account, any transactions Plaintiff made using his Account, and the relationship between the parties:

> Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. All such claims or disputes are referred to in this section as "Claims."
>
> The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

(*Id*. at p. 339 (Ex. J, p. 16).)

The Arbitration Agreement also includes express language requiring Plaintiff's claims to be resolved via arbitration on an individual basis (*id*):

> YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE IN A CLASS OR REPRESENTATIVE BASIS IN COURT OR IN ARBITRATION. ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.
> ***
> **What about class actions or representative actions?**
>
> Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. YOU AND WE AGREE NOT TO:
>
> 1. SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING;
>
> 2. SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE;

3. BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR

4. SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

The OSA, as with Chase's other contracts, similarly requires that any disputes are resolved by binding arbitration on an individual basis. (Ex. 3 (Sergi Dec.) p. 19 (Ex. B, ¶ 12).)

## **LEGAL STANDARD**

Section 2 of the FAA states that written arbitration agreements "evidencing a transaction involving [interstate] commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision embodies both a "liberal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Courts have long interpreted the FAA with a "healthy regard for the federal policy favoring arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Arbitration agreements governed by the FAA are presumed to be valid and enforceable. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp.*, 473 U.S. at 626-27. Pursuant to the FAA, arbitration must be compelled where: (1) a valid agreement to arbitrate exists, (2) the dispute falls within the scope of that agreement, and (3) a party has refused to proceed to arbitration in accordance with the arbitration agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). The party seeking to avoid arbitration bears the burden of showing that the arbitration clause is invalid or does not encompass the claims at issue. *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 717 (N.D. Ill. 2014). Further, "[t]he FAA's command to enforce arbitration agreements trumps

any interest in ensuring the prosecution of low-value claims." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2312 n.5 (2013); *accord Epic Systems Corp.*, 138 S. Ct. at 1622-23 (2018).

## ARGUMENT

### I. The FAA Requires That This Matter Proceed to Arbitration

#### A. The Arbitration Agreement Is Subject to the FAA

"The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 344; *accord CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (the FAA "requires courts to enforce agreements to arbitrate according to their terms"). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011). The Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

Here, the FAA governs the Arbitration Agreement because it is a written provision in a contract involving interstate commerce within the meaning of Section 2 of the FAA. The DAA involves interstate commerce as it governs deposit services that Chase – a national bank with its main office in Ohio – provides to Plaintiff – a customer in Illinois. *Davis v. JPMorgan Chase Bank*, No. 03 C 6891, 2004 WL 783382, at *2 (N.D. Ill. Jan. 27, 2004) (arbitration clause in credit card agreement was a contract involving interstate commerce).

#### B. The Arbitration Agreement Is Valid and Enforceable Under Illinois Law

The DAA containing the Arbitration Agreement is "expressly governed by federal law and, when not superseded by federal law, the law of the state where your account is located." (Ex.

9

1 (Deck Dec.) p. 337 (Ex. J, p. 14).) Thus, while the FAA governs the enforceability of the Arbitration Agreement, Illinois law – the law of the state where Plaintiff's account is located – governs the determination of whether a valid arbitration agreement exists. *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005); *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 366–67 (7th Cir. 1999) (to determine the validity of an arbitration agreement "a federal court should look to the state law that ordinarily governs the formation of contracts."). Here, under the DAA, this Court should apply Illinois contract law, the state where the Plaintiff resides and the dispute arose.

The validity of an arbitration agreement is analyzed using ordinary contract law principles. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 107-08 (Ill. 2006). This analysis considers "whether the basic ingredients of a contract—offer, acceptance, and consideration—are present." *Williams*, 2013 WL 708123, at *2 (citations and quotations omitted); *see also Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996) ("Courts may not…invalidate arbitration agreements under state laws applicable *only* to arbitration."); *Epic Systems Corp.*, 138 S. Ct. at 1622-23 (same). Here, all three components are met: (1) Chase offered to provide banking services to Plaintiff pursuant to the DAA, (2) Plaintiff accepted this offer and continued using Chase's services, and (3) there is valid consideration given the parties' mutual obligations under the DAA. *Williams*, 2013 WL 708123, at *4 ("[t]he arbitration agreement is therefore valid because it meets the offer-acceptance-consideration formula for contract formation"); *accord Boomer v. AT&T Corp.*, 309 F.3d 404, 416 (7th Cir. 2002) ("[defendant's] promise to continue telephone services (something it was not obligated to do) induced [plaintiff's] corresponding promise ... to arbitrate, and thus there was a bargained-for exchange and consideration").

Judge Edmond Chang's decision in *Williams* is instructive. The plaintiff sued TCF Bank

complaining of overdraft fees. *Williams*, 2013 WL 708123, at *1. TCF Bank moved to compel arbitration and stay the litigation based on the arbitration provision in its Account Contract. Among other things, the Account Contract informed Williams that she was entitled to opt out of the arbitration provision within 30 days of opening her account, with no effect on any other provisions of the Account Contract. *Id.* at *1-2. Williams argued that she had never accepted the arbitration agreement because TCF Bank did not provide it to her when she opened her account. *Id.* The court rejected this argument because in Illinois, "a party to a contract for consumer goods and services is bound by the contract's terms, even if unread at the exact moment of agreement, as long as the party was provided an opportunity to reject the contract later." *Id.* at *3 (citing *Bess v. DirecTV, Inc.*, 885 N.E.2d 488, 496-97 (Ill. App. Ct. 2008)). Because Williams did not reject the arbitration provision as she was invited to do by the Account Contract after it was made available to her, Judge Chang correctly held that Williams had accepted the agreement and was bound to arbitrate on an individual basis. *Id.* at *3-4.

The ruling in *Williams* is directly in line with other controlling Seventh Circuit authority applying Illinois law. In *Boomer*, the Seventh Circuit held that where a customer takes the benefits of offered services with a reasonable opportunity to reject them and had a reason to know that they were offered with the expectation of the customer being bound by the contract, the customer's continued use of the services operates as an acceptance of the offer. *Boomer*, 309 F.3d at 415. The Seventh Circuit held that the AT&T customer service agreement in *Boomer* provided the customer with a clear and reasonable opportunity to reject the offer but he failed to do so, and the customer's continued use of the defendant's telephone services constituted acceptance of the contract, including the arbitration provision. *Id.*

The Seventh Circuit reached the same conclusion in *Hill v. Gateway 2000, Inc.*, 105 F.3d

11

1147, 1148-49 (7th Cir. 1997). There, the Seventh Circuit held that the plaintiffs' continued use of the defendant's product after delivery constituted acceptance of the terms and conditions – including an arbitration clause – as a matter of Illinois law. *Id.*; *see also Taylor v. Samsung Elec. America*, No. 16 C 50313, 2018 WL 3921145, at *3 (N.D. Ill. Aug. 16, 2018) (continued use of cell phone and failure to take advantage of 30-day opt out manifested plaintiff's assent to the arbitration agreement); *Friends for Health v. Paypal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *17 (N.D. Ill. June 12, 2018) (Plaintiffs' failure to opt out of arbitration provision despite receiving notice of user agreement constitutes sufficient basis for compelling individual arbitration); *G&G Closed Circuit Events, LLC v. Castillo*, No. 14-cv-02073, 2017 WL 1079241, at *7 (N.D. Ill. Mar 22, 2017) (continued use of DirecTV services for years after receiving Customer Agreement constituted assent to the arbitration agreement); *Coleman v. LVNV Funding, LLC*, No. 15 C 11338, 2016 WL 3521939, at *2 (N.D. Ill. June 28, 2016) (continued use and payment confirmed plaintiff's acceptance of the arbitration agreement).

Here, the same conclusion applies. Like all of these (and other cases), Chase provided Plaintiff with the DAA and Plaintiff continued using his Account and Chase's services for years, even after December 2011. Plaintiff also confirmed his acceptance of the DAA and individual arbitration when agreeing to be bound by the OSA. Consequently, Plaintiff bound himself to arbitrate on an individual basis as a matter of law.[2]

### C. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement

Once it is determined that the parties have a binding arbitration agreement, an "order to

---

[2] The OSA is valid and enforceable under Illinois law. Plaintiff was required to and did affirmatively click a box signifying that he read and agreed to the OSA. (Ex. 3 (Sergi Dec.) ¶ 11.) *See, e.g., O'Quinn v. Comcast Corp.*, No. 10 C 2491, 2010 WL 4932665, at *3-4 (N.D. Ill. Nov. 29, 2010) (enforcing agreement where customer clicks a box accepting the agreement).

arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986). The Seventh Circuit has repeatedly construed the phrases "arising out of" and "relating to" in arbitration agreements broadly. *Gore*, 666 F.3d at 1033 ("[W]e read both 'arising out of' and 'relating to' broadly.") (citations omitted). Furthermore, where the arbitration provision is broad, as it is here, only an "express provision excluding a particular grievance from arbitration ... [or] the most forceful evidence of a purpose to exclude the claim from arbitration' can keep the claim from arbitration." *Exelon Generation Co., LLC v. Local 15*, 540 F.3d 640, 646 (7th Cir. 2008) (citations omitted).

The Arbitration Agreement broadly covers "any dispute relating in any way to your account or transactions," including any "[c]laims or disputes between you and us about your deposit account, transaction account, safe deposit box, and any related service with us [and any] claims or disputes arising from or relating to this agreement, [or] any prior agreement between us…." (Ex. 1 (Deck Dec.) at p. 338 (Ex. J, p. 15).) Plaintiff's allegations plainly fall within this broad provision. The dispute here relates to Plaintiff's Account and an October 2016 transaction. (Compl. ¶¶ 1, 16-37.) Accordingly, this Court must compel arbitration. *Williams*, 2013 WL 708123, at *14; *accord Troy v. First Premier Bank*, No. 10 C 7326, 2011 WL 4478437, at *5 (N.D. Ill. Sept. 26, 2011) (compelling individual arbitration of plaintiff's ICFA and unjust enrichment claims).

II. **The Arbitration Must Proceed On An Individual Basis**

The Supreme Court has repeatedly held that contractual waivers of the right to participate in class actions are enforceable. *Epic Systems Corp.*, 138 S. Ct. at 1622-23 (affirming class waiver); *DirecTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468-69 (2015) (same); *Concepcion*, 563 U.S.

13

at 351-52 (same); *Italian Colors*, 133 S. Ct. at 2309 ("courts must 'rigorously enforce' arbitration agreements according to their terms") (citations omitted).

Here, Plaintiff agreed that "[c]laims in arbitration will proceed on an individual basis, on behalf of the named parties only." (Ex. 1 (Deck Dec.) p. 339 (Ex. J, p. 16).) Plaintiff further agreed not to: (1) "seek to proceed on any claim in arbitration as a class claim or class action or other comparable representative proceeding"; (2) "seek to consolidate in arbitration any claims involving separate claimants (except for claimants who are on the same account), unless all parties agree"; (3) "be part of, or be represented in, any class action or other representative action brought by anyone else"; and (4) "seek any award or remedy in arbitration against or on behalf of anyone who is not a named party to the arbitration." (*Id.*)

Accordingly, pursuant to the Arbitration Agreement, Plaintiff must be ordered to arbitration on an individual basis. *Epic Systems Corp.*, 138 S. Ct. at 1622-23; *Imburgia*, 136 S. Ct. at 471; *Concepcion*, 563 U.S. at 336; *Williams,* 2013 WL 708123, at *14.

### III. This Entire Action Should Be Stayed Pending Arbitration

Section 3 of the FAA expressly states that, where a valid arbitration agreement requires a dispute to be submitted to arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Here, the entire case is subject to mandatory arbitration. The Arbitration Agreement expressly states that "[a]rbitration applies whenever there is a Claim between you and us. If a third party is also involved, in a Claim between you and us, then the Claim will be decided with respect to the third party in arbitration as well, and it must be named as a party in accordance with the rules of procedure governing the arbitration." (Ex. 1 (Deck Dec.) p. 339 (Ex. J, p. 16).) The Arbitration Agreement further explains that the "we" for purposes of the Arbitration Agreement, "includes JPMorgan Chase Bank, N.A.,

all of its affiliates, and all third parties who are regarded as agents or representatives of ours in connection with a Claim." (*Id.*); *see, e.g.*, *In re Argon Credit, LLC*, No. 16-39654, at *2-3 (N.D. Ill. Sept. 21, 2018) (enforcing broad arbitration clause that expressly covered "third parties related to any Dispute"); *Amisil Holdings Ltd. v. Clarium Cap. Mgmt.*, 622 F. Supp. 2d 825, 831 (N.D. Cal. 2007) (arbitration agreement enforced in favor of third party based on scope of the clause, the relationships among the parties, and the fact the nature of the claims).

Moreover, it would be unreasonable not to require individual arbitration of this entire case. Plaintiff complains of only one October 2016 transaction that Plaintiff made through Plaintiff's Chase account. (Compl. ¶¶ 19, 20.) Even unlike here, where an express contract clause requires that the entire case be sent to individual arbitration, courts have still required that an action be stayed to allow the arbitration to proceed. *Volkswagen Of America, Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007) (staying litigation to allow resolution of claims in arbitration and avoid inconsistent rulings where the arbitration is 'likely to resolve issues material to the lawsuit"). Here, all matters relating to Plaintiff's October 2016 transaction will be finally and completely resolved in a simple arbitration, expeditiously.

## CONCLUSION

For all of the foregoing reasons, this Court should enter an order compelling Plaintiff to arbitrate his claims on an individual basis and staying this action pending completion of the individual arbitration proceeding.

Dated: December 7, 2018                    Respectfully submitted,

*/s/ Paul J. Ferak*
Paul J. Ferak (ARDC No. 6272208)
Michael R. Cedillos (ARDC No. 6296052)
Christopher A. Mair (ARDC No. 6324283)
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400

*Attorneys for JPMorgan Chase Bank, N.A.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 7, 2018, a true copy of the foregoing was served by this Court's ECF system on all counsel of record.

      */s/ Paul J. Ferak*